**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

---------------------------------------------------------------X

**B.K.A.** individually, and on behalf of her child, E.K., a minor,

Plaintiffs,

-against-

**Plymouth-Canton Community Schools,**
Defendant.

---------------------------------------------------------------X

Case No. 2:26-cv-13665

**Administrative Review of Special Education Hearing Officer Decision**
Individuals with Disabilities Education Act.

Rehabilitation Act of 1973

Americans with Disabilities Act.

## VERIFIED COMPLAINT

B.K.A., individually, and on behalf of her minor child, E.K. (Plaintiffs), allege the following violations of their educational rights by Plymouth-Canton Community Schools (Defendant or District):

## PARTIES

1. E.K. is a 17-year-old "child with a disability" as defined by the Individuals with Disabilities Education Act (IDEA). 20 U.S.C. § 1401, *et seq*.

2. B.K.A. (Parent) is E.K.s mother. They have resided at all relevant times within the geographical area served by the District.

3. The District is the Local Educational Agency (LEA) responsible for providing E.K. a Free Appropriate Public Education (FAPE) under the IDEA.

4. The District's administrative offices are located at 454 S. Harvey Street, Plymouth, MI 48170.

5. The District is a recipient of federal funds for purposes of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (RA or § 504).

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action, which involves federal questions arising under the IDEA, 20 U.S.C. § 1401, *et seq*., the RA, 29 U.S.C. § 794, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, and 28 U.S.C. § 1331, which confers jurisdiction in cases arising under the Constitution and laws of the United States.

7. The Court has Supplemental Jurisdiction over state law claims brought under the Michigan Administrative Rules for Special Education (MARSE). Mich. Admin. Code R 340.1701; 28 U.S.C. § 1367.

8. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(l) as the District has its principal offices in this judicial district.

9. Plaintiffs have exhausted their administrative remedies for all claims that require exhaustion.

10. This matter is related to an earlier matter in this Court between the same parties, *B.K.A. o/b/o E.K., a minor v. Plymouth-Canton Community Schools*, No. 2:24-cv-10590-RJW (White, J).

## FACTUAL AND PROCEDURAL BACKGROUND

11. E.K. is a student with longstanding and significant social-emotional and academic disabilities and deficits.

12. The District has never addressed any of these disabilities and deficits adequately. The result has been that E.K. has never made adequate progress academically and has struggled even to attend school regularly.

13. Under the IDEA, students with disabilities receive Individualized Educational Programs (IEPs). *See* 20 U.S.C. § 1414. Among other things, IEPs must:

- Describe the child's abilities and disabilities.
- Classify the child's disabilities.
- Report the child present levels of academic and functional achievement.
- Set measurable, annual academic and functional goals.
- Describe specially designed instruction (SDI) for the child based on peer-reviewed research to the extent practicable.
- Describe accommodations to be provided to the child.
- Describe related services like physical therapy, speech therapy, counseling, and occupational therapy.
- Define the child's least restrictive environment (LRE), guaranteeing that she participates with non-disabled peers to the greatest extent possible.
- Describe measurable post-secondary goals for training, education, employment and independent living skills.

20 U.S.C. § 1414(d).

14. An IEP must be in effect at the beginning of each school year. 20 U.S.C. § 1414(d)(2)(A).

15. The IDEA also requires schools to evaluate and reevaluate children with disabilities regularly to identify and evaluate them in all areas of suspected disability. 20 U.S.C. § 1414(a).

16. As part of an IDEA evaluation or reevaluation, the school must review existing data about the child. 20 U.S.C. § 1414(c)(1).

17. Without accurate data, an IEP team cannot write an appropriate IEP.

18. When a child's circumstances change, an IEP team may be required to reevaluate the child and propose appropriate changes to the IEP as needed.

19. Ultimately, an IEP must be calculated to provide the child a free appropriate public education (FAPE), which the IDEA defines as follows:

> [S]pecial education and related services that—
>
> (A) have been provided at public expense, under public supervision and direction, and without charge;
>
> (B) meet the standards of the State educational agency;
>
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
>
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title."

20 U.S.C. § 1401(4)(B)(9).

20. The United States Supreme Court has defined FAPE as a program reasonably calculated for the child to make progress appropriate in light of her individual or unique circumstances. *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017).

21. Michigan provides a heightened standard for FAPE, defining "special education" as follows:

> [S]pecially designed instruction, at no cost to the parents, to meet the unique educational needs of the student with a disability and ***to develop the student's maximum potential***. Special education includes instructional services defined in R 340.1701b(a) and related services.

Mich. Admin. Code R 340.1701c(c) (emphasis added).

22. Parents have separate rights under the IDEA, which entitle them to participate meaningfully in the creation and implementation of their child's special educational program. *See Knable v. Bexley City Sch. Dist.*, 238 F.3d 755 (6th Cir. 2001) ("Substantive harm occurs when the procedural violations in question seriously infringe upon the parents' opportunity to participate in the IEP process.").

23. The District has never offered E.K. a FAPE. For purposes of this matter, it denied both her and B.K.A. a FAPE between June 8, 2024 and December 13, 2024.

24. This case relates to an earlier action between the same parties. Parents filed an action under the IDEA and MARSE for Due Process against the District and proceeded to a hearing in December 2023.

25. The SEHO found that the District had violated E.K.'s s right to a FAPE, had violated multiple provisions of the IDEA and MARSE, and ordered various remedies.

26. In March 2024, Plaintiffs filed an action in this Court to enforce the SEHO's order, to enforce the terms of an agreement the parties had reached, and to

obtain statutorily provided attorneys' fees. *See B.K.A. o/b/o E.K., a minor v. Plymouth-Canton Community Schools*, No. 2:24-cv-10590-RJW (White, J).

27. December 2024, following mediation overseen by the Court, the parties entered into a settlement agreement.

28. The agreement was executed by both parties on December 6, 2024.

29. The agreement provided that Plaintiffs had waived all legal claims through June 7, 2024.

30. The agreement further provided that "nothing in this agreement shall be construed to waive any of Plaintiffs' claims accruing after June 7, 2024."

31. The agreement further provided that B.K.A. would withdraw A.K. from District schools within seven days of the execution of the agreement

32. Unfortunately, the District continued to deny E.K. a FAPE on June 8, 2024 and through the entire period of this action, which ended on December 13, 2024.

33. On March 3, 2026, B.K.A. and E.K. filed a Due Process complaint alleging a denial of FAPE from June 8, 2024 to December 13, 2024.

34. The March 3, 2026 complaint spelled out four issues under the IDEA and MARSE:

- **ISSUE A:** Whether Respondent [District] failed to offer an IEP, educational services and evaluations during the relevant time period, including appropriate special education services and related services in the child's least restrictive environment, with the necessary accommodations and modifications, including objective, measurable and appropriate academic and functional

goals and objectives across areas of need, to address the appropriate academic, developmental, behavioral, counseling, emotional, social, communication and functional needs of the student in accordance with FAPE and the requirements of MARSE and the IDEA?

- **ISSUE B:** Whether Respondent, in the absence of appropriate services described above, is liable for the parent's costs incurred to provide timely and comprehensive evaluations and services to the student and compensatory educational services to the student?

- **ISSUE C:** Whether the district complied with the family's procedural rights, including but not limited to provision of records that parent requested and prior written notices at all required junctures.

- **ISSUE D:** Whether Plymouth-Canton Community Schools violated the student's or parents' rights under other causes of action (for purposes of exhaustion). This includes legal issues pursuant to Section 504 and the Americans with Disabilities Act consistent with *Perez v. Sturgis Public Schools* and other case law, statutes and regulations?

35. The complaint also stated discrimination and denial of FAPE claims under § 504 and the ADA, seeking relief available under those statutes, some of which was available under the IDEA and some not available (expert fees and costs and money damages).

36. SEHO Smith presided over a five-day hearing between April 28, 2026 and May 7, 2026.

37. The parties submitted written closing arguments on June 15, 2026.

38. Parent proved at trial that the District failed to offer E.K. a FAPE during the relevant period.

39. Parent introduced testimony from three experts supporting her allegations.

40. The District did not offer expert testimony.

41. Parent proved by a preponderance of the evidence that E.K.'s IEPs were critically deficient in key areas such as establishing accurate present levels of performance, offering proper goals across all areas of deficit, ensuring necessary accommodations and resources, and customizing the educational strategy and instruction to address E.K.'s unique learning requirements effectively.

42. She proved by a preponderance of the evidence that the District failed to propose or provide specialized reading program for EK, despite decades of research supporting and discussing peer-reviewed, scientifically based methods of instruction for students with learning disabilities in reading.

43. She proved by a preponderance of the evidence that the District failed to offer an appropriate writing program.

44. She proved by a preponderance of the evidence that the District failed to offer an appropriate math program.

45. She proved by a preponderance of the evidence that, despite being aware of E.K.'s serious emotional impairment, the District failed to modify E.K.'s IEP to provide necessary programming, services and accommodations (*i.e.*, therapeutic counseling from licensed psychologist, social-emotional goals).

46. She proved by a preponderance of the evidence that E.K.'s IEP goals were not objective, measurable, addressed to all areas of deficit, or based on her present levels of performance.

47. She proved by a preponderance of the evidence that E.K.'s IEP did not include appropriate behavioral interventions.

48. She proved by a preponderance of the evidence that the District failed to offer E.K. or even discuss a continuum of alternate placements in the LRE.

49. She proved by a preponderance of the evidence that the District failed to offer E.K. necessary related services, including, among other things, psychological services, parent counseling and training, formal social skills training, or assistive technology.

50. She proved by a preponderance of the evidence that the District failed to train its staff adequately, as shown by several District witnesses displaying lack of knowledge of core IDEA and MARSE requirements.

51. She proved by a preponderance of the evidence that the District failed to conduct a timely and comprehensive evaluation of E.K., nor offered to fund an IEE in the absence of a competent District evaluation.

52. She proved by a preponderance of the evidence that the District administered a deficient functional behavior assessment (FBA), resulting in inadequate behavioral interventions.

53. She proved by a preponderance of the evidence that the District failed to give a timely response to her request for E.K.'s records in the summer of 2024. This led to E.K.'s residential treatment facility (RTF), Village Academy, not having updated records from which to design and implement an appropriate program.

54. She proved by a preponderance of the evidence that the District failed to include B.K.A. in communications about E.K. during the relevant period.

55. She proved by a preponderance of the evidence that the District repeatedly failed to provide B.K.A. with IDEA/MARSE-required prior written notices (PWNs) during the relevant period.

56. She proved by a preponderance of the evidence that these violations individually and collectively caused E.K. tangible harm. Among other things, E.K. did not make appropriate progress academically, she missed significant instructional time due to unaddressed, emotional-disability-related absences, she received very low grades for the 2023-2024 school year, and she was declining psychologically.

57. She proved by a preponderance of the evidence that the District materially breached the parties' December 6, 2024 settlement agreement by offering it into evidence at the Due Process hearing without redacting B.K.A.'s name and signature and its various terms that were stated and agreed on its face to be confidential.

**Legal Errors in the SEHO's June 29, 2026 Decision and Order**

58. On June 29, 2026, SEHO Smith issued his Decision and Order.

59. The Decision and Order denied Parent and E.K. all relief.

60. SEHO Smith committed clear legal errors, resulting in his failure to address Plaintiffs' claims on their merits.

61. He misconstrued the parties' December 6, 2024 settlement agreement to preclude Parent and E.K. from citing evidence predating June 8, 2024 to prove their claims. He erroneously treated a bar on claims as an evidentiary bar.

62. He erred by holding that Plaintiffs' claims had accrued prior to June 8, 2024 and were therefore waived under the parties' December 6, 2024 agreement on the incorrect basis that their post June 8, 2024 claims relied on information available before June 8, 2024.

63. SEHO Smith thus erred by treating a waiver of Plaintiffs' claims up to June 7, 2024 as a prospective waiver of claims after that date.

64. E.K.'s right to a FAPE as of June 8, 2024 was not waived by the December 6, 2024 settlement agreement. To the contrary, as noted above, it was expressly preserved in that settlement agreement.

65. SEHO Smith erred by holding, without legal citation, that plaintiffs had to "identify new information arising after June 8, 2024" to prove that the District had denied E.K. a FAPE. SEHO Op. at 16.

66. SEHO Smith made a fundamental error in this holding.

67.Under the IDEA/MARSE, the District owed E.K. a FAPE as of June 8, 2024. To offer her a FAPE, it needed to consider all available information about her.

68. It was factually and legally impossible to offer E.K. a FAPE on June 8, 2024 without considering information created and gathered before that date.

69. Put differently, Plaintiffs could not enforce E.K.'s right to a FAPE on June 8, 2024 if, in proving their case, they were barred from citing evidence created before that date.

70. If E.K.'s IEP was legally deficient and denied her a FAPE before June 8, 2024, and the District failed to modify it to address its deficiencies, then it continued to deny her a FAPE until the District made needed modifications. That failure was actionable during the post-waiver period.

71. Similarly, if the District failed to gather necessary data and information about E.K. through comprehensive educational evaluations before June 8, 2024, and still lacked such information as of that date, then it lacked the information and data necessary to offer her a FAPE going forward.

72. The SEHO reversed the parties' burden in his holding about a lack of new information. Any lack of "new information" on E.K. was not a flaw in Plaintiffs' case; it represented a new, actionable violation by the District during the post-waiver period. The District, not the parent, bore a clear burden under the IDEA/MARSE to gather necessary information about E.K. to offer her a FAPE.

73.By the same fallacious reasoning, the SEHO improperly disregarded the testimony of Parents' experts.

74.The SEHO committed additional errors with respect to Plaintiffs' other claims under the IDEA/MARSE.

## STANDARD OF APPELLATE REVIEW

### A. The Individuals with Disabilities Education Act.

75. The IDEA offers states federal funding in exchange for their agreement to provide students with disabilities a FAPE.

76. The Supreme Court has explained:

> FAPE, as the [IDEA] defines it, includes 'special education' and 'related services.' 'Special education' is 'specially designed instruction . . . to meet the unique needs of a child with a disability'; 'related services' are the support services 'required to assist a child . . . to benefit from' that instruction. A State covered by the IDEA must provide a disabled child with such special education and related services 'in conformity with the [child's] individualized education program,' or IEP.

*Endrew F.*, 580 U.S. at 390-91.

77. The *Endrew F.* court held that an IEP must be tailored to the child's unique needs and requires "careful consideration of the child's individual circumstances."

78. The Court established that an IEP must be "appropriately ambitious."

79. The Court rejected the then-prevailing standard that an IEP give a child the opportunity to make "merely more than *de minimis*" progress, establishing a "markedly more demanding" standard that requires an educational program to be

"reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."

80. As noted above, Michigan applies a heightened FAPE standard, defining "special education" as instruction designed not merely to confer meaningful benefit, but "to develop the student's maximum potential." Mich. Admin. Code R 340.1701c(c).

81. A district court must perform an independent judicial review of the SEHO's decision and make a decision based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii).

82. A district court's review of an SEHO decision is referred to as "modified *de novo*" review. As the Sixth Circuit has explained:

> The district court applies a "modified *de novo*" standard of review, meaning that it must make an independent decision based on the preponderance of the evidence while also giving "due weight" to the determinations made by the State ALJ. Towards this objective, the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.
>
> The court may not simply adopt the state administrative findings without an independent reexamination of the evidence, but neither may it substitute its own notions of sound educational policy for those of the school authorities which it reviews, As with the deference to school officials on matters of substantive educational methodology, the weight due to the State ALJ's findings depends on whether the finding is based on educational expertise. Less weight is due on matters for which educational expertise is not relevant because a federal court is just as

> well suited to evaluate the situation; more weight . . . is due to . . . determinations on matters for which educational expertise is relevant.

*LH. v. Hamilton Cnty. Dep't of Educ.*, 900 F.3d 779 (6th Cir. 2018) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982); *Burilovich v. Bd. of Educ. of Lincoln Consol. Schs*., 208 F.3d 560, 565 (6th Cir. 2000); *Doe v. Metro. Nashville Pub. Schs*., 133 F.3d 384, 387 (6th Cir. 1998); 20 U.S.C. § 1415(i)(2)B)) (cleaned up) (internal citations omitted)).

## LEGAL CLAIMS

### COUNT I
### IDEA, MARSE
### Denial of FAPE; Reversal of Erroneous SEHO Decision.

83. The SEHO's decision was not well reasoned and not deserving of deference.

84. The SEHO made incorrect, internally inconsistent findings of fact.

85. The SEHO made clear errors of law, which led him to disregard crucial evidence supporting Plaintiffs' claims.

86. The SEHO did not properly apply the standard established in *Endrew F.*, which requires that an IEP be "appropriately ambitious in light of [the student's] circumstances."

87. The SEHO did not properly apply Michigan's heightened FAPE standard, which requires that schools provide IEPs designed not merely to confer meaningful benefit, but "to develop the student's maximum potential." Mich. Admin. Code R 340.1701c(c).

88. Wherefore, Parent asks that this Court reverse the SEHO's decision, which is not well reasoned, and award the relief requested below.

**COUNT II**
**SECTION 504, ADA**

89. Parent incorporates by reference each allegation stated above.

90. The District is a recipient of federal funds for purposes of § 504.

91. Solely due to her disability, E.K. was excluded from the participation in, denied the benefits of, and subjected to discrimination under programs and activities administered by the District during the relevant period, in violation of § 504 and the ADA.

92. The District further violated Section 504 and the ADA by virtue of denying E.K. a FAPE under the IDEA for the relevant period.

93. Wherefore, Parent asks that this Court to award the relief afforded under § 504 and the ADA, requested below.

## COUNT III
## IDEA, § 504, ADA
## Attorney's Fees, Expenses and Expert Costs

94. Parent incorporates by reference each allegation stated above.

95. Parent believes she will prevail in this action for review, in which she requests that this Court reverse the SEHO's erroneous decision. Parents will therefore be a "prevailing party" under the IDEA. 20 U.S.C. § 1415(i)(3)(B).

96. A prevailing party is entitled to reasonable attorney's fees. 20 U.S.C. § 1415(i).

97. Wherefore, Parent is entitled to reasonable attorney's fees for their Due Process hearing and for this action for administrative review.

98. Parent is further entitled to reasonable fees and costs for additional time expended and costs incurred in seeking attorney's fees in this federal action.

99. Under § 504 and the ADA Parent is also entitled to reimbursement of her expert fees.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

- Assume jurisdiction of this action.
- Receive the administrative record.
- Vacate the SEHO's decision.
- Find that the District denied B.K.A.'s and E.K.'s right to a FAPE.

- Find that the District should have made E.K. eligible under OHI and SLD in reading, math and writing, in addition to EI.
- Find that the District failed to administer timely and comprehensive evaluations of E.K. in all suspected areas of disability and need.
- Award E.K. compensatory education in academics, including reading, writing, math, provided for a few hours per week during the school year and every summer until she is performing at the level of her peers, at District expense.
- Order that E.K. receive Structured Literacy Orton-Gillingham, Lindamood-Bell, or Language! Instruction, delivered explicitly, sequentially, multi-sensorily, in 1:1 or small-group setting at District expense.
- Find that the recommendations of Plaintiffs' experts, McCaskill and Dr. Hahn, are appropriate and order that they be provided in the form of compensatory services.
- Order compensatory plus ongoing counseling services from a psychologist individually for two hours per week and in group therapy one hour per week for as long as the Court determines appropriate and at District expense as a necessary related service.
- Order that the District provide or pay for B.K.A. to receive training in parent management, counseling, and coaching.
- Order payment for the Plaintiffs' expert re-evaluation.
- Order reimbursement for costs B.K.A. incurred for E.K. to attend the Residential Treatment Center, for which E.K. received educational services and credits which were accepted by the District.
- Find that Plaintiffs are prevailing parties under the IDEA.
- Award Plaintiffs reasonable attorneys' fees, costs, and expenses.
- Award Plaintiffs reasonable expert costs.

- Award Plaintiffs pre- and post-judgment interest.
- Award any other relief this Court deems appropriate.

Dated: September 25, 2026

Respectfully Submitted,

Catherine Michael, Esq. (P76285)
Connel Michael, LLP
550 Congressional Blvd., Suite 350-11
Carmel IN 46032
(317) 343-4482
catherine@connellmichaellaw.com

s/ Dorene J. Philpot, Esq.
Dorene Philpot (P84063)
**Philpot Law Office, PLLC**
275 Bristol Lane
Livingston, Texas 77351
(281) 989-2010
Fape4kids@gmail.com

Benjamin J. Hinerfeld, Esq.
(admitted E.D. Mich.)
**Law Office of Benjamin J. Hinerfeld**
9 Stoddard Street
Plymouth, MA 02360
Office (508) 591-0385
Cell (215) 694-7432
Fax (215) 689-2423
Ben@hinerfeldlaw.com

## VERIFICATION UNDER 28 U.S.C. § 1746

I, B.K.A., declare under penalty of perjury that the factual allegations in this Verified Complaint are true and correct to the best of my personal knowledge, information, and belief.

Respectfully submitted,

[redacted]

R.K.A., Plaintiff

Dated: Sept. 25, 2026